UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

J&J SPORTS PRODUCTIONS INC.,

    Plaintiff,

v.                                                        Case No. 17-C-1525

JULIA OTTO, individually d/b/a
JOSH'S PLACE

    Defendant.

## ORDER ON PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

Plaintiff J&J Sports Productions, Inc. brought this action alleging that defendant Julia Otto, individually and as the operator of Josh's Place, knowingly and willfully violated 47 U.S.C. §§ 553 and 605 by unlawfully intercepting and exhibiting "Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight Program," including undercard bouts and the entire television broadcast, on May 2, 2015, at Josh's Place in Appleton, Wisconsin. Jurisdiction exists under 28 U.S.C. § 1331. Defendant has failed to appear in this action. The Clerk entered default against the defendant on January 31, 2018. Plaintiff now moves for entry of default judgment and an award of damages, attorney's fees, and costs. ECF No. 9.

### BACKGROUND

The background facts of this case, except for those relating to damages, are taken from the allegations of Plaintiff's Complaint and the affidavit and supporting documents filed with Plaintiff's motion for default judgment. ECF No. 1. They are deemed admitted as a consequence of the defendant's default. *See, e.g.*, *Black v. Lane*, 22 F.3d 1395, 1397 n.4 (7th Cir.1994). Plaintiff has

established that it owned the distribution rights to the fight program, which was broadcast by closed circuit television or by encrypted satellite signal. The broadcast originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal. Plaintiff entered into contracts with commercial establishments in Wisconsin and throughout North America to enable them to publicly exhibit the program to their patrons.

One of Plaintiff's investigators visited Josh's Place at 11:50 p.m. on May 2, 2015. Aff. of Russell D. Joseph, ECF No. 10-2. The investigator observed two flat screen televisions displaying the fight. *Id*. One was mounted on the wall behind the bar, the other was mounted on the west wall of the dining room. *Id*. The fight had concluded, but the investigator observed Mayweather and Pacquiao waiting for the decision to be announced. *Id*. The investigator did not pay a cover charge to enter the bar, and he conducted three separate head counts with constant results of ninety-three people inside the building and eight onlookers observing from outside. *Id*. Josh's Place has a capacity of approximately 50 people. *Id*. The investigator left the establishment at 12:05 a.m. *Id*.

## LIABILITY

Plaintiff alleges that Defendant violated 47 U.S.C. §§ 553 and 605, but without the benefit of discovery or an admission from Defendant, Plaintiff cannot determine exactly how Defendant intercepted its signal (i.e., via coaxial cable or satellite). As Plaintiff acknowledges, it may not simultaneously pursue relief under §§ 553 and 605 because the sections target two distinct types of piracy. *See United States v. Norris*, 88 F.3d 462, 468 (7th Cir. 1996) (holding that 47 U.S.C. § 605 governs the interception of programming as it travels through the air, while 47 U.S.C. § 553 governs the interception of cable television programing traveling over a cable network). Plaintiff requests relief under § 605, which often produces higher damages awards, but cannot demonstrate

2

conclusively that Defendant intercepted a satellite signal on May 2, 2015. Nevertheless, since Defendant's failure to appear or defend deprived Plaintiff of the opportunity to conduct discovery regarding the transmission at issue, I conclude that liability is appropriately established under § 605. *Accord J & J Sports Prods., Inc. v. Aguilera*, No. 09–4719, 2010 WL 2362189, at *2 (N.D. Ill. June 11, 2010).

As a result of Defendant's default, they are deemed to have unlawfully intercepted the program and shown it to patrons and to have done so willfully and for purposes of direct or indirect commercial advantage or private financial gain. *See Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."); *see also Kingvision Pay–Per–View, Ltd. v. Scott E'S Pub., Inc.*, 146 F. Supp. 2d 955, 959 (E.D. Wis. 2001) ("'Willful' as used in these statutes means a 'disregard for the governing statute and an indifference for its requirements.'") (quoting *ON/TV v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985)). "'In addition, the court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct.'" *Garden City Boxing Club, Inc. v. Frezza*, 476 F. Supp. 2d 135, 138 (D. Conn. 2007) (quoting *J & J Sports Prods., Inc. v. Drake*, No. 06–246, 2006 WL 2927163, at *5 (E.D.N.Y. Oct. 11, 2006)).

3

## DAMAGES

A claimant entitled to relief under § 605 may elect actual or statutory damages pursuant to § 605(e)(3)(C). Plaintiff has elected statutory damages, which range from a minimum of $1,000 to a maximum of $10,000, in the discretion of the court. § 605(e)(3)(C)(i)(II). Plaintiff also seeks enhanced damages for a willful violation. Section 605 permits enhanced damages of up to $100,000, at the discretion of the court, where the defendant has exhibited disregard for the governing statute and indifference to its requirements. *See, e.g.*, *Kingvision*, 146 F. Supp. 2d at 959–61. Finally, under § 605(e)(3)(B)(iii), Plaintiff has requested an award of attorneys' fees and costs in the amount of $1,716.

I first turn to the question of what amount of statutory damages is appropriate in this case. There are various ways in which courts have gone about calculating statutory and enhanced damages for violations of § 605:

> Some courts have assessed statutory damages using as a yardstick the number of patrons in the establishment viewing the show. *See, e.g.*, *Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 489 (listing cases); *Time Warner Cable v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y.1997) (same). Some courts have awarded a flat sum for each violation. *See, e.g.*, *Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 489–90 (listing cases); *Taco Rapido Rest.*, 988 F. Supp. at 111 (same). A multiplier has been used in cases of willful violations. *See, e.g.*, *Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 491 (recommending for willful violation an additional three times the base statutory damages award for one defendant, an additional four times the award for another defendant, and an additional eight times the award for a third defendant); *Cablevision Sys. Corp. v. Maxie's N. Shore Deli Corp.*, No. CV 88 2834(ASC), 1991 WL 58350, *2 (E.D.N.Y.1991) (awarding an additional amount for willful violation in the amount of five times the initial statutory damages award).

*Kingvision*, 146 F. Supp. 2d at 960. The court in *Kingvision* calculated the statutory damages based upon the rate the plaintiff charged its customers for the right to exhibit the program, which in turn

4

was based upon the maximum fire code occupancy of the building in which the exhibition was to take place.

Here, Plaintiff has provided its rate card indicating what it would charge to permit the defendants to show its fight program based on the maximum capacity of the facility where the event is broadcast. Rate Card from J & J Sports Productions, Inc., ECF No. 10-1. Because Josh's Place had a capacity of 50 people, Plaintiff's corresponding standard rate was $3,000. Accordingly, the court will award statutory damages of $3,000.

As I have already concluded that Defendant's violation was willful within the meaning of the statute, I now turn to the question of what amount of enhanced damages is appropriate. The only guidance the statute itself gives courts in assessing damages for willful violations is that they not exceed $100,000 for violations of § 605 and $50,000 for violations of § 553. § 553(c)(3)(B); § 605(e)(3)(C)(i)(II). In order to arrive at an enhanced damage figure, courts have considered factors such as: (1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event. *Joe Hand Prods. v. Kaczmar*, No. 08–2910, 2008 WL 4776365, at *2 (N.D.Ill. Oct. 29, 2008) (citations omitted). Beyond these factors, "courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense)." *Id.*

Here, there is nothing to suggest that Defendant has pirated in the past and there is no indication of the extent of any ill-gotten gains by Defendant or the actual damages suffered by Plaintiff for this act of piracy. There is also no evidence that Defendant advertised the event and the

investigator was not required to pay a cover charge to enter the bar. Thus, all of these factors point toward a lower amount of enhanced damages. As noted, approximately ninety-three people were in Josh's Place during the investigator's visit, also suggesting that Defendant did not receive substantial financial gains as a result of her piracy of the fight program. In order to deter future violations, the court will impose enhanced damages of $9,000, applying a multiplier of three times the amount of the $3,000 in statutory damages.

## COSTS AND ATTORNEYS' FEES

Finally, I turn to Plaintiff's request that I award $1,716 in costs and attorneys' fees. Under § 605(e)(3)(B), if a violation of the section is found, attorneys' fees and costs are mandatory. The total attorney hours submitted, multiplied by the hourly rate requested by plaintiff comes to a total of $1,250 in attorneys' fees. Aff. of Peter S. Balistreri, ECF No. 10. Plaintiff also requests $466 in costs: $400 for filing fees and $66 for service of process. *Id.* Plaintiff's request is reasonable, so the court will award Plaintiff $1,716 in costs and attorneys' fees.

## CONCLUSION

For the reasons stated above, the court grants Plaintiff's motion for judgment by default against the defendant in the amount of $13,716.00. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   5th   day of April, 2018.

                                            s/William C. Griesbach
                                            William C. Griesbach, Chief Judge
                                            United States District Court